EXHIBIT A

Form 1     NATIONAL RAILROAD ADJUSTMENT BOARD
                        FIRST DIVISION

                                            Award No. 30618
                                            Docket No. 50258
                                            21-1-NRAB-00001-200067

The First Division consisted of the regular members and in addition Referee Barbara C. Deinhardt when award was rendered.

                        (SMART – Transportation Division
PARTIES TO DISPUTE:  (
                        (Union Pacific Railroad Company

STATEMENT OF CLAIM:

"Claim of Elko Brakeman J R Stewart for reinstatement to service with all rights unimpaired, removal of all notations of this discipline from his personal record, and restoration of his disciplinary record to the status at which it stood prior to the instant case, with compensation for any lost time and benefits as a result of this matter, including but not limited to time lost if held out of service prior to the investigation, time lost while attending the investigation, and all wage equivalents to which entitled (including vacation benefits, all insurance benefits and monetary loss for such coverage) while improperly disciplined."

FINDINGS:

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

The Claimant, an eight-month employee, was working on June 14, 2019. After completing his shift he went to the hospital and was diagnosed with a broken fibula.

Form 1  Award No. 30618
Page 2  Docket No. 50258
 21-1-NRAB-00001-200067

He returned to the yard office and reported the injury to management. He was assessed a MAPS Dismissal for dishonesty.

The Carrier argues that at no time on June 14, 2019 did the Claimant report having injured himself. The witness he said saw him on the ground did not corroborate this. Rather, two witnesses testified that he told them he was limping because his boots were bothering him. Therefore, the Carrier concluded that the Claimant violated GCOR 1.6 – Conduct: Dishonest. Carrier contends that (1) the Carrier presented substantial evidence proving the Claimant's culpability; (2) the status assessed was both reasonable and consistent with the Carrier's policy; and (3) there were no procedural errors that would warrant overturning the MAPS status assessed.

The Organization argues that the Claimant was not dishonest. When he first fell during his shift, he did not believe he was injured. It was only after work when the pain became such that he had to go to the hospital, that he learned he had a broken leg. He immediately reported it to the Carrier. The Carrier failed to meet its burden of proof.

Upon a review of the record, the Board finds as follows.

We find that the Carrier has not met its burden of proving dishonesty. The Claimant gave a plausible explanation of the sequence of events and there is no plausible explanation to the contrary. He testified that he was fine when he reported to work that evening. A witness statement corroborates this, as did the testimony of Carrier's witness, Dakota Traina, who testified that he had seen the Claimant early in the shift and he was not limping. It is undisputed that at some point during his shift he began to limp noticeably. He told two people that he was limping because of a problem with his boots. He explained at the hearing that he was embarrassed about falling and didn't think he had injured himself and so did not tell anyone. It was not until after he left work and he was still in pain that he went to the emergency room and was diagnosed with a fractured ankle. He immediately returned to report the injury.

It is undisputed that the Claimant did in fact have a fractured ankle. This was objectively diagnosed by X-ray. The only question is when did this fracture happen? Analyzing this logically, there are three possibilities—he injured himself before work, he injured himself during work as he reported or he injured himself after work. If he injured himself before work, he would likely have been limping from the beginning of

Form 1                                                                              Award No. 30618
Page 3                                                                           Docket No. 50258
                                                                                  21-1-NRAB-00001-200067

the shift and not just later in the shift. If he were intending to report an off-duty injury as having happened during work, he would surely have told witnesses and management that he had just fallen, rather than blaming it on the new boots.

It is also logically unlikely that he injured himself after work. He left work at around 7:30 and went right to the hospital. If he had not had a limp noticed by two different people at work, one of whom said it was not noticeable at the beginning of the shift, or if a greater time elapsed between the end of his shift and his trip to the hospital, perhaps this explanation could be reasonable. However, the chances that he had a noticeable limp that developed during his shift at work <u>and</u> then also managed to injure his ankle in the very short time after leaving work and before going to the hospital are too coincidental.

Thus it is most likely that he injured himself at work, as he testified, and that he did not report it at the time because he did not think he was seriously injured. His statement that Traina saw him fall is troubling. His explanation, however, is plausible. Both Traina and the Claimant testify that Traina saw him limping and came over to ask if he was OK, to which he responded that his boots were bothering him. The Claimant testified that he assumed that Traina had seen him fall because Traina came over just as he stood up. Both versions could be possible—that Traina didn't see him fall but went over just as he was getting up and taking a few limping steps and that the Claimant assumed from the question that Traina must have seen him fall. The sequence of events is somewhat questionable and if there were any other logical explanation for his limp, followed by his immediate trip to the hospital and objective diagnosis, we might agree with the Carrier's conclusion of dishonesty. There is, however, no other more logical explanation and we therefore conclude that the Claimant's version of what happened is credible and he was not guilty of dishonesty.

While he should have reported the fall immediately, he was not charged with failure to report an injury.

We therefore conclude that the Claim should be sustained and the MAPS Dismissal removed and claimant returned to service.

Form 1                                                                                Award No. 30618
Page 4                                                                              Docket No. 50258
                                                                                       21-1-NRAB-00001-200067

## AWARD

Claim sustained.

## ORDER

This Board, after consideration of the dispute identified above, hereby orders that an award favorable to the Claimant(s) be made. The Carrier is ordered to make the Award effective on or before 30 days following the postmark date the Award is transmitted to the parties.

                                             NATIONAL RAILROAD ADJUSTMENT BOARD
                                                            By Order of First Division

Dated at Chicago, Illinois, this 12th day of May 2021.