EXHIBIT B

Form 1

**NATIONAL RAILROAD ADJUSTMENT BOARD**
**FIRST DIVISION**

Award No. 30349
Docket No. 50257
21-1-NRAB-00001-200066

The First Division consisted of the regular members and in addition Referee Andrew M. Strongin when award was rendered.

(SMART – Transportation Division
PARTIES TO DISPUTE:  (
(Union Pacific Railroad Company

**STATEMENT OF CLAIM:**

"Claim of Salina Brakeman R C Hewitt for reinstatement to service with all rights unimpaired, removal of all notations of this discipline from his personal record, and restoration of his disciplinary record to the status at which it stood prior to the instant case, with compensation for any lost time and benefits as a result of this matter, including but not limited to time lost if held out of service prior to the investigation, time lost while attending the investigation, and all wage equivalents to which entitled (including vacation benefits, all insurance benefits and monetary loss for such coverage) while improperly disciplined".

**FINDINGS:**

The First Division of the Adjustment Board, upon the whole record and all the evidence, finds that:

The carrier or carriers and the employee or employees involved in this dispute are respectively carrier and employee within the meaning of the Railway Labor Act, as approved June 21, 1934.

This Division of the Adjustment Board has jurisdiction over the dispute involved herein.

Parties to said dispute were given due notice of hearing thereon.

This proceeding concerns the dismissal of Brakeman R.C. Hewitt, ID #0451002 ("Claimant"), for his role in a May 29, 2019, incident in which the train to which he

Form 1
Page 2

Award No. 30349
Docket No. 50257
21-1-NRAB-00001-200066

was assigned, along with Engineer Brown and Conductor Shirack, struck a passenger car in the crossing at Milepost 172.45 on their way from Salina to Junction City, causing property damage and personal injury. It is undisputed that the train's crew failed to heed an XH order and entered the crossing at a speed of approximately 41 MPH without any effort to stop or slow the train or otherwise to follow procedures relating to XH orders. In practical terms, the XH order meant that the crossing was unprotected due to an inactive/inoperable signal, and the crew was required to stop the train, dismount, and escort the train through the crossing at slow speed.

The gravamen of this case is whether the Claimant bears culpability for the collision, which is a question that stands apart from the responsibility of the Conductor for reasons that quickly become obvious.

The record shows that although the Conductor did not receive notice of the XH order in his track warrants, Dispatch advised him of the warrant by radio. The Conductor was required to write that advice in his log but did not.

Meanwhile, the Claimant was working from the ground, preparing to line the train out of the Salina Yard. As he was not on the train when the Conductor spoke with Dispatch, he did not overhear Dispatch relaying the XH order to the Conductor or any resulting discussion of the order between the Conductor and Engineer. When the Claimant finished his duties on the ground, he boarded the train and requested his job briefing from the Conductor, as he was supposed to do. The Conductor said nothing about the XH order. Thus, although the Claimant was in the cab at the time of the collision, he had no knowledge of the XH order and therefore no reason to know that the crossing was unprotected.

The Carrier argues that the Claimant, as a Brakeman, shares culpability because he was in a position to observe and to comply with the rules, including not only critical rules relating to safe crossings, but also dismissal event rules relating to negligent/careless conduct. Each crew member, the Carrier argues, is required to read and understand the rules and observe safe work practices.

Notwithstanding any culpability of the Conductor, who had knowledge of the XH order, there is no substantial evidence to demonstrate that the Claimant failed any of his responsibilities. Under the circumstances of this case, where the XH order was not included in the warrants and was communicated to the train only via radio, the Claimant was totally reliant on the Conductor to communicate the order to him via

Form 1                                                                     Award No. 30349
Page 3                                                                     Docket No. 50257
                                                                   21-1-NRAB-00001-200066

the job brief or his log.  It is clear, however, that the Conductor failed to apprise the
Claimant of the order in either respect, as he failed to mention it during the
Claimant's requested job brief, failed to note it in his log, and made no mention of it to
the Claimant at any time through any means.  Simply put, the Claimant had no
knowledge of the XH order; so far as the Claimant had any reason to believe, the
signal was working properly, the crossing was protected, and there was no reason to
be concerned about proceeding through the crossing at speed.  Whatever shared
responsibility might have existed had the Claimant any reason to know of the XH
order, the fact is that he did not know of the order and therefore bears no culpability
for the accident.

     Consistent with the foregoing, the Claim must be sustained and the Claimant
properly is awarded the remedy sought in the Statement of Claim.

## AWARD

     Claim sustained.

## ORDER

     This Board, after consideration of the dispute identified above, hereby orders
that an award favorable to the Claimant(s) be made.  The Carrier is ordered to make
the Award effective on or before 30 days following the postmark date the Award is
transmitted to the parties.

                                 NATIONAL RAILROAD ADJUSTMENT BOARD
                                       By Order of First Division

Dated at Chicago, Illinois, this 11th day of November 2020.